**OFFICIAL CARGO TRANSPORT COMPANY, INC., Plaintiff,**

v.

**CERTAIN INTERESTED UNDERWRITERS AT LLOYDS OF LONDON SUBSCRIBING TO CERTIFICATE OF INSURANCE NUMBERS M104255.000 AND M104256.000, Defendants,**

No. 02–21828CIV.

United States District Court,
S.D. Florida.

May 3, 2005.

Honorable Barry Garber, Maria I. Escoto–Castiello, Esq., Coral Gables, Gabriel M. Sanchez, Esq., Miami, FL, for Official Cargo.

John J. Pappas, Esq., Scott J. Frank, Esq., Butler Pappas Weihmuller Katz Craig LLP, Tampa, FL, for Certain Underwriters at Lloyds.

Daniel W. Raab, Esq., Miami, FL, for Crowley Linen Services, Inc.

## ORDER ON DEFENDANT'S MOTION FOR ATTORNEY'S FEES

MORENO, District Judge.

The plaintiff has objected to the Magistrate Judge's Report (D.E. 378) recommending attorney's fees to the defendant. In addressing the issue of attorney's fees, the Court must decide the defendant's intent when it made the offer of judgment to settle the case. If the defendant's offer of judgment was made with a good faith intent to settle the case, it is entitled to attorney's fees. If the offer was not in good faith the motion for attorney's fees should be denied. Complicating the issue, however, is the matter of whether the plaintiff is entitled to the attorney-client privileged communications in order to impeach the defendant's evidence that the offer of settlement was made in good faith. Because the Court finds that the defendant has waived the attorney-client privilege, a new evidentiary hearing must be conducted. At such evidentiary hearing, the plaintiff shall have access to the privileged documents.

However since the Court's final judgment is on appeal, the Court will deny the attorney's fees motion without prejudice to refile after the mandate has been issued by the Eleventh Circuit Court of Appeals. All other pending motions are denied as moot and the objections are overruled.

## BACKGROUND

In August 2001, the Plaintiff purchased insurance for its cargo through the Defendant. Later, in December 2001, one of the Plaintiff's trailers was stolen while the truck was being washed. Plaintiff filed a claim with the Defendant but the Defendant refused to pay for the loss of the cargo, which was a full trailer load of brassieres. The Plaintiff and intervening Plaintiff paid the owner of the .bras $236,000 for the loss. In May 2002, the Plaintiff brought this action in state court to recover the value of the cargo contained in the truck. The Plaintiff claimed that it was entitled to be reimbursed for its losses under the contract. The Plaintiff's complaint also states that the insurance policy jacket was never delivered to the Plaintiff. The Defendant responded to the Plaintiff's complaint in claiming that the truck was not under constant surveillance, as required under the terms of the policy. The Defendant removed the case to federal court based on diversity of citizenship.

In October 2002, the Plaintiff filed an opposition to a motion for judgment on the pleadings, wherein the Plaintiff twice mentioned the issue of failure to deliver the policy. On October 31, 2002, the deposition of Mr. De la Torre was conducted, at which he was asked questions by the Plaintiff regarding delivery of the policy. On April 24, 2003, pursuant to Florida Statute § 768.79 and Florida Rule of Civil Procedure 1.442, the Defendant made an offer of $500 per policy per party (or $1000 for each Plaintiff). On October 15, 2003, the Plaintiff filed a motion for summary judgment where the issue of delivery was argued. In November of 2003, the Defendant offered each Plaintiff $20,000 at mediation. On April 7, 2004, Magistrate Judge Garber issued a Report and Recommendation stating that there was an genuine issue of fact on the issue of delivery and on May 11, 2004, the Court adopted the Report and Recommendation. At the end of the trial on June 28, 2004, the Court issued judgement as a matter of law in favor of Defendant on the issue of delivery, but stated that it was a close issue. The Defendant filed notice of the offer of judgment and a verified motion to tax costs and fees.

The two primary issues in the case prior to and during trial were whether there was delivery of the policy and whether the delivery of the truck was under constant surveillance. If Florida Statutes § 626.922 applies to the surplus lines statute and the policy was not delivered prior to the incident, then the Defendant would be precluded from denying coverage based on any condition listed in the policy, including the requirement that the trailer be under constant surveillance. If, however, delivery of the policy was perfected, then liability turns on whether the trailer was under constant surveillance, since the policy exempted cargo that was left unsupervised. The Court granted judgment as a matter of law in favor of the Defendant on the first issue and the jury found in favor of the Defendant on the second issue.

The Defendant now seeks attorney's fees and costs based on the offer of judgment but the Plaintiff argues that the offer was not made in good faith. Plaintiff claims that the offer was not made in good faith because either the Defendant did not know the facts or law of the case when he made the offer or must have made it without the intent to settle the case.

## ENTITLEMENT OF ATTORNEY'S FEES

█ Pursuant to Florida Law, a party which makes an offer may collect attorney's fees and costs incurred subsequent to the offer if the offer is not accepted and the offering party later obtains a judgment in an amount 25% less than the offer or obtains a finding of no liability. The bur-

den is on the Defendant to show that it was entitled to fees.

There is no dispute that the offer was made on April 24, 2003 in accordance with the law. Nor is there any dispute that the judgment obtained was less than 25% of the offer or no liability was found by the jury. Thus, the Defendant appears to be entitled to attorney's fees. However, the Plaintiff argues that the offer, at the time it was made, was not made in good faith because the facts as pled and as shown through deposition testimony revealed that the issue of delivery, a novel or unique issue, precluded any limitation on liability. The burden of showing Defendant's lack of good faith is on the Plaintiff. The Defendant argues that, at the time of the offer, it made the offer with the intent to settle the case and did not believe the facts to be important and still argues that the delivery of policy issue is legally insignificant.

### GOOD FAITH

 For an offer or proposal of settlement to be made in good faith the offeror must have had a reasonable foundation for making the offer and an intent to settle the case. *See Wagner v. Brandeberry*, 761 So.2d 443 (Fla. 2nd DCA 2000). Thus, to satisfy its burden of showing that an offer was not made in good faith, the offeree must show that the offeror had no reasonable basis to support its offer or that the offeror did not have the intent to settle the case.

 The Court is to look at the subjective motivations of the offeror at the time the offer is made and determine whether "the offeror has basis in known or reasonably believe fact to conclude that the offer is justifiable." *Dept. Of Highway Safety & Motor Vehicles, Fl. Highway Patrol v. Weinstein*, 747 So.2d 1019 (Fla.3rd DCA 2000). The fact that the offer is nominal is not decisive. In such a situation, the Court is to look at all the known or reasonably believed facts, circumstances and the law to determine if the offer was made in good faith and whether the offeror's could have reasonably concluded that exposure to liability was minimal. *See McMahan v. Toto*, 311 F.3d 1077 (11th Cir.2002). Moreover, even though the offeror is the prevailing party at the summary judgment stage, if the issue is a novel or complex legal issue, a nominal offer may be found to lack good faith. *See Deltona House Rentals, Inc. v. Cloer*, 734 So.2d 586 (Fla. 5th DCA 1999).

In order to determine good faith, a court has to make credibility findings. Credibility findings can only be made after an opportunity to cross-examine the witness who claims good faith. In this case that will necessitate the use of the privileged communications, assuming proper waiver of the privilege.

### INTENT TO SETTLE

 The second requirement is that the offer be made with the intent to settle. *Schmidt v. Fortner*, 629 So.2d at 1040 n. 5. Credibility findings are necessary for this determination as well and that can only be accomplished after effective cross-examination, including the use of privileged documents which have been withheld but may be provided if the privilege is waived.

### WAIVER OF PRIVILEGE

In support of its claim of a lack of good faith, the Plaintiff sought to have the Defendant produce documents and letters of communication between the Defendant's attorney and the Defendant. Defendant withheld that evidence based on a claim of attorney-client privilege. The Plaintiff argues that it has been severely handicapped by its inability to have those documents produced. The Plaintiff argues that the attorney-client privilege cannot be used as both a shield and a sword. *Stewart &*

*Stevenson Services v. Westchester Fire Insurance Company,* 804 So.2d 584 (Fla. 5th DCA 2002).

■ At the hearing before the Magistrate, in support of its lack of good faith, the Plaintiff called the Defendant's attorney to the stand. Although the Defendant's attorney had previously invoked the privilege at the deposition and refused to produce documents based on that privilege, the attorney did not invoke the privilege at the hearing. He proceeded to answer questions regarding the basis for the offer. The Court deems such testimony as a waiver of the attorney-client privilege.

Yet, even if such testimony is not considered a waiver, the Defendant clearly waived the privilege when, after the Plaintiff finished questioning the Defendant's attorney, the Defendant's attorney stated that he wished to establish a record regarding the basis for the offer and then proceeded to establish such a record. (Trans. p. 49). The Defendant's attorney even revealed statements communicated to him by the client. At this point, the attorney-client privilege has been waived. Moreover, once the attorney-client privilege is waived, it is forever waived.

### CONCLUSION

■ The Court finds that the defendant has waived the attorney client privilege. The Court also concludes that a new evidentiary hearing is required at which time there is an opportunity for the plaintiff to use the privileged documents. At such hearing, the Court will then make credibility findings on the crucial issues of good faith offer of judgment and intent to settle. However, such hearing shall be held only after the mandate from the Eleventh Circuit is issued on the pending appeal.

---

1. The Court would like to express its appreciation to Craig A. Lewis of Hogan & Hartson

In the meantime, the motion for attorney's fees is denied, without prejudice to refile within 20 days of the mandate being issued. All other pending motions are denied as moot and all objections are overruled as moot, consistent with this order.