DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**GEICO GENERAL INSURANCE COMPANY,**
Appellant,

v.

**KELLY PATON,**
Appellee.

No. 4D12-4606

[September 17, 2014]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael L. Gates, Judge; L.T. Case No. 09-13697(12).

Paul L. Nettleton of Carlton Fields, P.A., Miami, for appellant.

Philip M. Burlington of Burlington & Rockenbach, P.A., West Palm Beach, and Richard M. Benrubi of Liggio & Benrubi, P.A., West Palm Beach, for appellee.

Louis K. Rosenbloum of Louis K. Rosenbloum, P.A., Pensacola, for Amicus Curiae, Florida Justice Association.

GROSS, J.

We affirm the final judgment in this first-party bad faith action brought by an insured against her underinsured motorist carrier and write to address one issue: whether, in the bad faith trial, the plaintiff was required to once again prove her damages, instead of relying on the jury's damage determination in the first trial, which also established the liability of the tortfeasor. We hold that the jury's determination of damages in the first trial was binding on the insurance company in the bad faith trial.

On January 1, 2008, Kelly Paton, a passenger, was injured in a car accident due to the negligence of the underinsured driver. The driver's insurance company, GEICO General Insurance Company ("Geico"), paid Paton the $10,000 policy limit. Paton's mother maintained uninsured/underinsured coverage with Geico, with $100,000 of coverage.

Paton's attorney, Darryl Kogan, demanded the $100,000 policy limit from Geico. Geico offered $1,000. After Geico's expert reviewed Paton's MRI which, according to her expert, showed that she had two lumbar herniations, Geico maintained its $1,000 offer. Later, Geico raised its offer to $5,000, but returned to the $1,000 offer after Paton refused to settle. In an attempt to resolve the case, Paton, against Kogan's advice, reduced her demand to $22,500. Geico did not respond to this offer.

The case went to trial. The jury returned a verdict in Paton's favor and against Geico. In closing argument, plaintiff's counsel did not suggest a specific amount for Paton's intangible losses. The jury awarded $10,000 for past pain and suffering, and $350,000 for future pain and suffering. The verdict set Paton's total damages at $469,247.

Geico did not file a motion for new trial.

Judgment was entered in favor of Paton, but was limited to the $100,000 UM policy limit. Geico paid the final judgment.

With leave of court, Paton amended her complaint to add a claim of bad faith under section 624.155, Florida Statutes (2010). Before trial, Paton moved in limine to exclude evidence of damages; she argued that the excess verdict returned in the UM trial established the damages she could recover under her bad faith claim. In opposition, Geico filed its own motions in limine seeking to (1) exclude from evidence in the bad faith trial the verdict returned in the UM trial and (2) require Paton to prove her damages anew in the bad faith trial. The circuit court granted Paton's motions and denied those of Geico.

At the bad faith jury trial, there were two issues of fact: 1) whether the attorney representing Paton in the underlying litigation met a statutory notice requirement and 2) whether Geico failed to act in good faith to settle Paton's claim. Consistent with the rulings on the motions in limine, Paton presented evidence of the verdict returned in the UM trial and the trial court removed the damages issue from the jury's consideration with an instruction that the court would award damages in an amount allowable under Florida law if its verdict was for the plaintiff.

The jury found for the plaintiff. The circuit court entered a final judgment in the amount of the excess verdict from the UM trial ($369,247) plus prejudgment interest.

Geico argues that the circuit court erred by treating the excess verdict from the UM trial as conclusive evidence of Paton's damages in the bad faith trial, thereby denying the company procedural due process and violating its right to appeal and access to the courts.

Geico's position is not well taken based on (1) the wording of the statute creating the bad faith cause of action, (2) the Supreme Court's jurisprudence in first party bad faith actions, and (3) Geico's failure to challenge the damage award after the first trial or in this appeal.

By its 1982 enactment of section 624.155, Florida Statutes, the "Legislature created a first-party bad faith cause of action by an insured against the insured's uninsured or underinsured motorist carrier, thus extending the duty of an insurer to act in good faith to those types of actions." *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 59 (Fla. 1995); *see also* § 624.155(1)(b)1., Fla. Stat. (2009).

Two later statutory amendments firmly established that the damages in a first-party bad faith case include the total amount of the plaintiff's damages that were caused by the original third-party tortfeasor, even an amount in excess of policy limits. *See* Chs. 90-119, § 55, 92-318, § 80, Laws of Fla. Subsection 624.155(8) provides that:

> The damages recoverable pursuant to this section [624.155] shall include those damages which are a reasonably foreseeable result of a specified violation of this section by the authorized insurer and may include an award or judgment in an amount that exceeds the policy limits.

In 1992, the Legislature passed section 627.727(10), which provides:

> The damages recoverable from an uninsured motorist carrier in an action brought under s. 624.155 shall include the total amount of the claimant's damages, including the amount in excess of the policy limits, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of a law of this state. The total amount of the claimant's damages is recoverable whether caused by an insurer or by a third-party tortfeasor.

According to the Supreme Court, these two statutes reflect the Legislature's determination "that damages in first-party bad faith actions are to include the total amount of a claimant's damages, including any amount in excess of the claimant's policy limits without regard to whether the damages were caused by the insurance company." *Laforet*, 658 So. 2d at 60.

In the context of a first-party bad faith action, the underlying action between the insured and the insurer establishes two elements that must exist for the bad faith cause of action to accrue—the liability of the uninsured tortfeasor and the extent of the plaintiff's damages in the underlying accident. In *Blanchard v. State Farm Mutual Automobile*

*Insurance Co.*, 575 So. 2d 1289, 1291 (Fla. 1991), the Supreme Court wrote that:

> an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue.  It follows that an insured's claim against an uninsured motorist carrier for failing to settle the claim in good faith does not accrue before the conclusion of the underlying litigation for the contractual uninsured motorist insurance benefits.  Absent a determination of the existence of liability on the part of the uninsured tortfeasor *and the extent of the plaintiff's damages,* a cause of action cannot exist for a bad faith failure to settle.

(Emphasis added).  Applying section 627.727(10), *Laforet* reiterated that the initial action for first-party benefits, which sets the plaintiff's damages arising from an accident, determines the extent of the plaintiff's damages in a first party bad faith case:

> Section 627.727(10) provides that the damages recoverable from an uninsured motorist insurance carrier in a bad faith action brought under section 624.155 and the 1990 amendment thereto shall include the total amount of a claimant's damages, *including any amount in excess of the claimant's policy limits* **awarded by a judge or jury in the underlying claim**.

658 So. 2d at 56-57 (emphasis added); *see also Progressive Select Ins. Co. v. Shockley*, 951 So. 2d 20, 20 (Fla. 4th DCA 2007) (recognizing that "both the existence of liability and the extent of damages are elements of a statutory cause of action for bad faith"); *State Farm Mut. Auto. Ins. Co. v. O'Hearn*, 975 So. 2d 633, 635 (Fla. 2d DCA 2008) (stating that "[t]here is an abundance of case law that holds that a first-party bad faith claim does not accrue until there has been a final determination of both liability and damages in an underlying coverage claim").  Thus, based on the Florida Supreme Court's construction of the applicable statutes, the initial action between the insurer and the insured fixes the amount of damages in a first-party bad faith action.

Forcing retrial of a plaintiff's damages at a first party bad faith trial, as Geico urges, is such bad policy that we do not glean even a hint of its existence in any case the Supreme Court has decided in this area.  Under *Blanchard*, the recovery of damages in the first-party action for insurance benefits is necessary for the accrual of the bad faith claim.  Geico participated fully in the first trial with an opportunity to challenge the

plaintiff's evidence and a powerful motive to suppress the amount of damages. When it comes to a judge or jury's factual determination of damages, Florida's policy is not to give multiple bites at the same apple absent some legal infirmity in the first trial. As one federal district judge has observed,

> [f]orcing plaintiffs to relitigate their damages in first-party bad faith actions would have serious ramifications, including: running the almost-certain risk of inconsistent verdicts; potentially raising comity issues between state and federal courts; creating a discrepancy (surely unintended and definitely illogical) between first- and third-party bad faith claims; placing an inexplicable burden on plaintiffs to prove their cases twice; and causing a great deal of judicial inefficiency.

*Batchelor v. Geico Cas. Co.*, No. 6:11-cv-1071-Orl-37GJK, 2014 WL 3906312, *4 (M.D. Fla. June 9, 2014). To a limited extent, Geico could have addressed damages in the bad faith trial by arguing that the amount of damages awarded in the first trial could not reasonably have been foreseen, so there was an absence of bad faith.

We reject Geico's position that the procedure used in this case has frustrated its appellate rights because it was unable to challenge the full amount of the jury's verdict in the first case. Florida Rule of Civil Procedure 1.530(a) provides that a "new trial may be granted to all or any of the parties and on all or a part of the issues." The motion for new trial must be served "not later than 15 days after the *return of the verdict* in a jury action." Fla. R. Civ. P. 1.530(b) (emphasis added). Because Geico never filed a rule 1.530(a) motion, we are left to guess at what errors might have infected the first trial. However, we note that the extent of damages awarded—$469,247—and the amount of the final judgment—$100,000— are in the same ballpark for damages arising from the type of injury of which plaintiff complained. *See, e.g., Leinhart v. Jurkovich*, 882 So. 2d 456, 459 (Fla. 4th DCA 2004) (award of $348,000 where plaintiff suffered "herniated disc in the lumbar portion of the back"); *Delgardo v. Allstate Ins. Co.*, 731 So. 2d 11, 13 (Fla. 4th DCA 1999) ($204,269 awarded for "herniated disc as well as cervical and lumbar sprains"). Many types of legal errors might have applied equally to damages above and below the $100,000 policy limit, such that the entire amount of damages was interrelated for the purpose of being appealable. Because the damages in the first trial fixed the amount of bad faith damages and an order denying a motion for new trial could have addressed damages in excess of $100,000, an appeal after the final judgment in the first trial directed at the total amount of damages thus would have fallen within the

constitutional parameters of the jurisdiction of this Court as an appeal from a "final judgment[ ] or order[ ]" of the trial court.[1]  Art. V, § 4(b)(1), Fla. Const.  This approach conserves judicial resoures and best serves the procedure contemplated by *Blanchard*.  By failing to file a Rule 1.530(a) motion or take an appeal in the first trial, Geico did not preserve its right to challenge the total amount of the jury's damage award from the first trial.

In this area of the law, we do not discern the constitutional  conundrum identified by Judge Altenbernd's concurring opinion in *Geico General Insurance Co. v. Bottini*, 93 So. 3d 476 (Fla. 2d DCA 2012).  There the jury verdict found that the plaintiff's damages were $30,872,266 and the trial court entered a final judgment for the applicable policy limits of $50,000.  *Id.* at 477.  In light of this disparity, the majority held that "even if Geico were correct that errors may have affected the jury's computation of damages," any such errors were harmless given the amount of the judgment.  *Id.*  In his special concurrence, Judge Altenbernd expressed concern that a district court of appeal would not have jurisdiction to consider the propriety of damages in excess of $1,050,000, an amount that Geico conceded would have been proper after a finding of liability, because that amount was not included in the judgment on appeal.  *Id.* at 478.

When applied to the issue presented in *Bottini*—where a jury's damage award far exceeds the amount of a final judgment—the "final judgment or order" language of Article V, section 4(b)(1) should be expansively read to include an appeal from an order denying a new trial in a first party suit for uninsured motorist benefits.  The final judgment subsumes the earlier order's resolution of the jury's damage determination so that the total amount is an immediately appealable issue.  Such a reading is consistent with the Supreme Court's view in *Blanchard* that a first-party bad faith cause of action cannot accrue until after a factfinder's determination of the uninsured tortfeasor's liability and the extent of the plaintiff's damages.  575 So. 2d at 1291.

The harmless error approach of the *Bottini* majority would also appear to allow for a challenge to damages in the bad faith case; the harmless error finding would not preclude later consideration of the propriety of damages in excess of $50,000.  *Bottini* would allow for this practical option where the trial judge defers ruling on the propriety of any amount of damages in excess of the final judgment until after a finding of bad faith

---

[1]The Supreme Court might well clarify that this is the preferable approach by adopting a rule requiring final judgments in uninsured motorist suits between an insured and the insurer to include specific findings on the total amount of damages, even though execution would issue for only the policy limits.

in the second trial; in this instance an appellate challenge to the amount of damages would occur after the entry of a final judgment in the bad faith case.[2] Whether the bad faith cause of action has been abated or added by amendment, the record and damage issue are all part of the same case. If there is a jurisdictional bar to reviewing damages in the appeal of that lawsuit, the practical advantage of this option is its compliance with the First Rule of Judicial Economy by postponing a ruling on the legal propriety of a damage award until those damages are triggered by a bad faith determination.[3,4]

We have considered the other arguments raised on appeal and find no reversible error.

*Affirmed.*

CIKLIN, J., and KASTRENAKES, JOHN, Associate Judge, concur.

*     *     *

**_Not final until disposition of timely filed motion for rehearing._**

---

[2]We do not decide here whether Geico might have pursued the appellate option suggested by the appellee's brief—raising "any issue regarding the 'excess' damages in this appeal from the bad faith judgment in which the 'excess' damages were incorporated"—without filing a rule 1.530 motion after the verdict in the first trial.

[3]We acknowledge Geico's heavy reliance on *King v. Government Employees Insurance Co.,* No. 8:10-cv-977-T-30AEP, 2012 WL 4052271 (M.D. Fla. Sept. 13, 2012), but reject its analysis. The case treats Judge Altenbernd's concurring opinion in *Bottini* as binding authority, while ignoring the majority opinion, and engages in an abbreviated "procedural due process" analysis without citation to authority or consideration of *Lindsey v. Normet*, 405 U.S. 56, 77 (1972). *See N. Am. Van Lines, Inc. v. Ferguson Transp., Inc.,* 639 So. 2d 32, 34 (Fla. 4th DCA 1994) (observing that the United States Supreme Court "has stated that as long as a 'full and fair trial on the merits is provided, the Due Process Clause of the Fourteenth Amendment does not require a State to provide appellate review'" (quoting *Lindsey*, 405 U.S. at 77)).

[4]The procedure in this paragraph might become problematic where a plaintiff files an entirely separate action for bad faith. One possibility is to allow the insurance company to raise its preserved objections to the amount of the verdict in the first-party action for insurance benefits as an affirmative defense in the bad faith action so that the issues might still be raised in the appeal of the bad faith verdict.

- 7 -